UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Catherine Ann Lutz, | No. 1:22-cv-1497-TLN-GSA |
| Plaintiff, | **FINDINGS AND RECOMMENDATIONS TO GRANT PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, TO REMAND FOR FURTHER PROCEEDINGS, AND TO DIRECT ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF AND AGAINST DEFENDANT COMMISSIONER OF SOCIAL SECURITY** |
| v. | |
| Commissioner of Social Security, | |
| Defendant. | |
| | **(Doc. 7, 10)** |

## I.    Introduction

Plaintiff Catherine Ann Lutz seeks judicial review of a final decision of the Commissioner of Social Security terminating her social security disability insurance benefits pursuant to Title II of the Social Security Act.[1]

## II.    Factual and Procedural Background

In a favorable determination dated April 17, 2015 (the "Comparison Point Decision" or "CPD"), Plaintiff was found disabled and awarded benefits as of May 1, 2014, based on her stage 4 non-Hodgkin's follicular lymphoma meeting listing 13.05 of 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d)).  AR 17; 94–99; 367–73.  On July 1, 2018, the "disability cessation date", following a continuing disability review ("CDR") the agency found that Plaintiff was no longer disabled due to medical improvement, a decision which was upheld on reconsideration.  AR 116; 133–42.  Plaintiff requested a hearing before an ALJ, and three such hearings were held on the following dates, April 21, 2020, May 18, 2021, and August 24, 2021.  AR 36–65; 66–80; 81–92.  On September 9, 2021, the ALJ issued an unfavorable decision upholding the termination of Plaintiff's benefits as of July 1, 2018.  AR 12–35.  On September 12, 2022, the Appeals Council denied review making the Commissioner's decision final.  AR 1–6.

---

[1] The parties did not consent to the jurisdiction of a United States Magistrate Judge.  Doc. 5, 13.

Plaintiff subsequently filed a complaint in this Court.

### III. The Disability Standard Generally

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted).

When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and quotations omitted). If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §1382c(a)(3)(B).

### IV. Continuing Disability Review

After finding a claimant disabled, the agency must conduct a continuing disability review

2

"from time to time." 20 C.F.R. § 416.989; 42 U.S.C. § 1382c(a)(3)(H)). Continuing disability is not presumed, rather the claimant must establish it. 42 U.S.C. § 1382c(a)(4); *see also Lambert v. Saul*, 980 F.3d 1266, 1275-76 (9th Cir. 2020). To find a claimant no longer disabled substantial evidence must show cessation of the previously disabling impairment, or medical improvement which renders the claimant able to perform substantial gainful activity. *Id.*

The inquiry is governed by a seven-step analysis. At step one, the ALJ must determine whether the claimant has an impairment or combination of impairments which meets or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CRF 416.920(d), 416.925 and 416.926). If the claimant does, her disability continues (20 CFR 416.994(b)(5)(i)).

At step two, the ALJ must determine whether medical improvement has occurred (20 CFR 416.994(b)(5)(ii)). Medical improvement is any decrease in medical severity of the impairment(s) as established by improvement in symptoms, signs and/or laboratory findings (20 CFR 416.994(b)(1)(i)). If medical improvement has occurred, the analysis proceeds to the third step. If not, the analysis proceeds to the fourth step.

At step three, the ALJ must determine whether medical improvement is related to the ability to work (20 CFR 416.994(b)(5)(iii)). Medical improvement is related to the ability to work if it results in an increase in the claimant's capacity to perform basic work activities (20 CFR 416.994(b)(1)(iii)). If it does, the analysis proceeds to the fifth step.

At step four, the ALJ must determine if an exception to medical improvement applies (20 CFR 416.994(b)(5)(iv)). There are two groups of exceptions found at 20 CFR 416.994(b)(3) and (b)(4). If the first group exceptions apply, the analysis proceeds to the next step. If the second group exceptions apply, the claimant's disability ends. If none apply, the claimant's disability continues.

At step five, the ALJ must determine whether all of the claimant's current impairments in combination are severe (20 CFR 416.994(b)(5)(v)). If all current impairments in combination do not significantly limit the claimant's ability to do basic work activities, the claimant is no longer disabled. If they do, the analysis proceeds to the sixth step.

At step six, the ALJ must assess the claimant's residual functional capacity based on the current impairments and determine if s/he can perform past relevant work (20 CFR 416.994(b)(5)(vi)).  If the claimant has the capacity to perform past relevant work then his/her disability has ended.  If not, the analysis proceeds to the last step.

At step seven, the ALJ must determine whether other work exists that the claimant can perform given his/her residual functional capacity and considering his/her age, education, and past work experience (20 CFR 416.994(b)(5)(vii)).  If the claimant can perform other work, s/he is no longer disabled. If the claimant cannot perform other work, his/her disability continues.

## V.  <u>The ALJ's Decision</u>

The ALJ noted that the prior disability determination was based on the finding that Plaintiff met Listing 13.05 due to lymphoma.  AR 17.  The ALJ found that since July 1, 2018, Plaintiff had the following medically determinable impairments: scoliosis; obesity; depressive disorder; somatic disorder; and a mixed personality disorder.  AR 17.

The ALJ further found that, since July 1, 2018, Plaintiff did not have an impairment or combination thereof that met or medically equaled any of the impairments listed at 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526).  AR 17.  The ALJ stated that medical improvement was not an issue because an exception applied, explaining as follows:

> This case involves a Group 1 error, which is an exception to the medical improvement requirement. Here, substantial evidence shows that the prior determination/decision was in error. After review of the record, multiple medical consultants determined the prior finding that the claimant met listing 13.05 was in error, and the claimant's conditions were non-severe (3A/8-9; 17F/6). Likewise, at the hearing, Steven Golub, MD, testified that the claimant did not meet listing 13.05A at any point because there was no persistence or recurrence of a lymphoma subsequent to treatment as required under 13.05(A)(1), and the claimant's chemotherapy followed by radiation was the standard treatment regimen, indicating this was part of a one, multi-modal, anticancer treatment which does not meet the requirements of 13.05(A)(2) (hearing testimony).

AR 17–18.

Next, the ALJ concluded that since July 1, 2018, Plaintiff's medically determinable impairments referenced above did not cause more than a minimal impact on her ability to perform basic work activities and therefore were not severe.  AR 18–25. Because of the absence of any severe

impairment the analysis did not proceed to the formulation of an RFC or consideration of Plaintiff's ability to perform past relevant work or other work in the national economy.  The ALJ thus found that Plaintiff was no longer disabled as of July 1, 2018, and did not become disabled again thereafter.  AR 25.

### VI.   Issues Presented

Plaintiff asserts two claims of error: **1-** the ALJ erred in the evaluation of Plaintiff's treating physicians' opinions, including applying the wrong standard and relying on erroneous reasoning and insubstantial evidence to reject the opinions[2]; **2-** the ALJ erred in the evaluation of Plaintiff's subjective testimony and symptom complaints, including a lack of specificity and erroneous reliance on activities of daily living[3].

### A.   Opinions of Dr. Sarang and Dr. Renner

#### 1.   Legal Standard

For applications filed before March 27, 2017, the regulations provide that more weight is generally given to the opinion of treating physicians, which are given controlling weight when well supported by clinical evidence and not inconsistent with other substantial evidence.  20 C.F.R. § 404.1527(c)(2); *see also Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995), as amended (Apr. 9, 1996) (noting that the opinions of treating physicians, examining physicians, and non-examining physicians are entitled to varying weight in residual functional capacity determinations).

An ALJ may reject an uncontradicted opinion of a treating or examining physician only for "clear and convincing" reasons.  *Lester*, 81 F.3d at 831.  In contrast, a contradicted opinion of a treating or examining physician may be rejected for "specific and legitimate" reasons.  *Id.* at 830. In either case, the opinions of a treating or examining physician are "not necessarily conclusive as to either the physical condition or the ultimate issue of disability."  *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999).  Regardless of source, all medical opinions that are not

---

[2] Plaintiff discussed these as two distinct arguments (numbered 1 and 4) but herein will be considered together.
[3] Plaintiff also discussed these as two distinct arguments (numbered 2 and 3) but herein will be considered together.

given controlling weight are evaluated using the following factors: examining relationship, treatment relationship, supportability, consistency, and specialization.  20 C.F.R. § 404.1527(c).

For applications filed on or after March 27, 2017, the new regulations eliminate a hierarchy of medical opinions, and provide that "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources."  20 C.F.R. § 404.1520c(a).  Rather, when evaluating any medical opinion, the regulations provide that the ALJ will consider the factors of supportability, consistency, treatment relationship, specialization, and other factors.  20 C.F.R. § 404.1520c(c).  Supportability and consistency are the two most important factors and the agency will articulate how the factors of supportability and consistency are considered.  *Id.*

On April 22, 2022, the Ninth Circuit addressed whether the specific and legitimate reasoning standard is consistent with the revised regulations, stating as follows:

> The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant. See 20 C.F.R. § 404.1520c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) ..., including those from your medical sources."). Our requirement that ALJs provide "specific and legitimate reasons" for rejecting a treating or examining doctor's opinion, which stems from the special weight given to such opinions, see Murray, 722 F.2d at 501–02, is likewise incompatible with the revised regulations. Insisting that ALJs provide a more robust explanation when discrediting evidence from certain sources necessarily favors the evidence from those sources—contrary to the revised regulations.

*Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

### 2.   <u>Analysis</u>

### a.   <u>Quoting the Wrong Legal Standard</u>

Before addressing the medical opinion evidence, the ALJ explained:

As for the medical opinion(s) and prior administrative medical finding(s), we will not defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical finding(s) or medical opinion(s), including those from your medical sources. We fully considered the medical opinion(s) and prior

administrative medical finding(s) in your case.  AR 19

Thus, the ALJ quoted the revised regulations applicable to claims filed on or after March 27, 2017 (20 C.F.R. § 404.1527c(a)) rather than the regulations that applied to claims filed earlier (20 C.F.R. § 404.1527(a)).  The prior version was known as the "treating physician rule."

Neither party cites authority specifically addressing which version applies where, as here, the original claim was filed prior to March 27, 2017, but the claimant challenges a continuing disability review (CDR) which found she was no longer disabled as of July 1, 2018.  Plaintiff contends that because the regulations reference only the "filing" date, that should be considered the operative date absent any authority suggesting otherwise. MSJ at 11, Doc. 7.  Because Defendant does not dispute this, the Court need not take a formal position on the issue.  The parties agree that the ALJ quoted the wrong regulation.

Plaintiff contends the ALJ's misquotation of the relevant legal standard alone warrants remand given the Ninth Circuit's clear instruction that reliance on the wrong legal standard is harmful error.  Reply at 2 (citing *Stone v. Heckler*, 761 F.2d 530, 531 (9th Cir.1985)).  Defendant suggests however, that the misquotation amounted to a mere "transcription error" and that the ALJ nevertheless *applied* the correct legal standard by assigning varying amounts of "weight" to each medical opinion.  Resp. at 6, Doc. 10.

On this point of contention, Defendant's argument is not particularly compelling as the difference between the two regulations is not just a matter of semantics.  Rather, the old regulations began with the proposition that the treating physician's opinion "generally"[4] is given the most weight, and this is so when "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence."  20 C.F.R. §

---

[4] It is worth noting that Plaintiff also misstates the legal standard in asserting that the applicable regulations require the treating source opinion be given controlling weight.  *See* MSJ at 11.

404.1527(c)(2).

Here, the ALJ did not demonstrate awareness that the analysis begins with the presumption that the treating source opinions are given the most weight, even quoting the revised regulation stating otherwise.

Further, as the Ninth Circuit explained in *Woods* (quoted above), for cases governed by the prior regulations, Ninth Circuit caselaw imposed upon ALJ's a heightened standard of articulation when rejecting a treating source opinion than would otherwise apply.  Treating source opinions could only be rejected for "clear and convincing reasons" if the opinion was uncontradicted, or for "specific and legitimate reasons" where, as here, the treating source opinions were contradicted by another opinion like that of the consultative examiner.  As quoted above, the Ninth Circuit clarified in *Woods* that the judicially created heightened standard of articulation is also defunct under the new regulatory scheme.

However, the Court need not take a position as to whether the incorrect recitation of the legal standard alone warrants remand.  Even assuming the error was a mere "transcription error" as Defendant suggests, and assuming further that the ALJ had the correct regulations in mind when assigning varying degrees of "weight" to each medical opinion, the ALJ's articulated reasoning still fails under the "specific and legitimate reasoning standard."[5]

**b.**   **The ALJ's Reasoning for Rejecting the Treating Source Opinions**

First with respect to Dr. Sarang, Plaintiff's primary care physician, the ALJ explained:

> The record also contains various opinions which predate the cessation date. For example, in 2016, Monica Sarang, MD, noted the claimant required extra protection from UV radiation and was photosensitive during radiation therapy (40F/15). However, the record does not establish any ongoing radiation therapy after the July 1, 2018 cessation date. As such, the record does not support that this limitation is

---

[5] Of note again, Plaintiff does not discuss the heightened standard of articulation, or make an attempt to apply it-- instead resting her argument on the contention that the ALJ is required to give controlling weight to the treating source opinion.

ongoing, and the undersigned gives it no weight for the period at issue. Similarly, the undersigned has considered the application for a permanent parking placard also signed off by Dr. Sarang in March 2016, due to pelvic lymphoma with right hip pain (40F/17). The undersigned notes that this document does not specify any specific functional limitations. Moreover, this predates the cessation date by more than 2 years. Further, it is also inconsistent with other evidence including the July 2019 consultative examination where the claimant was noted to have an unremarkable gait and generally good range of motion of all major joints (18F/4-5). As such, the 2016 parking permit application is not persuasive for the period at issue and the undersigned gives it no weight.

The timing of opinion evidence in relation to "the cessation date" is not significantly relevant here as it is undisputed that Plaintiff had no active lymphoma as of that date, and Plaintiff's treating physicians did not suggest otherwise.[6]  As will be discussed, what the opinion evidence did suggest is that Plaintiff had ongoing pelvic pain and limitation as a result of her admittedly successful lymphoma treatment and the presence of a residual inoperable mass.  This opinion evidence is relevant to the extent it speaks to her pain and limitation after the "cessation date," even if the opinion was authored prior to or after that date.  The letter concerning UV sensitivity and the disabled parking placard application have little importance given Dr. Sarang had elsewhere specified functional limitations, including limitations on walking, with much more clarity and support.

The ALJ then explained as follows:

In October 2018, Dr. Sarang also provided a jury duty excuse letter stating that due to pelvic pain and nerve discomfort, the claimant was unable to sit for prolonged periods, was home-bound, and needed pain medication every 4 hours (9F/4; 42F/1). This opinion was made during the period at issue. However, it is not supported by Dr. Sarang's records showing good stable clinical findings (2F/13). Additionally, the vague limitation on sitting is not fully consistent with the claimant's ability to take long flights at least twice a year as she relocates from spending winter in California to summer in Switzerland (3F/10, 13, 20). Further, the statement that the claimant was home-bound in October 2018, the sitting limitation, and the implied effect of pain medications, are all inconsistent with the claimant's ability to make the "long drive" to psychiatry appointments with Margaret Stuber, MD in 2018 (see 36F). As a result, the undersigned gives very little weight to this opinion.

---

[6] Nor does there appear to be any dispute that Plaintiff's lymphoma never met Listing 13.05 despite the fact that she was awarded benefits on that basis.

Though not significant to the analysis, the inability to meet the obvious sitting demands of jury service implies at least some non-trivial work-related functional limitation even if not necessarily a disabling level of limitation. The ALJ references "good stable" findings, discussed more below, which the ALJ referenced on a number of occasions and which Plaintiff reasonably disputes as insufficiently specific.

As to Plaintiff's twice-yearly flights from California to Switzerland and back, this is not inconsistent with significant sitting limitations as the records, even those cited by the ALJ, suggest it was not leisure travel but was at least in part for medical care as her oncologist Dr. Renner was located in Switzerland where she was a citizen and received free treatment. *See* AR 813 (Dr. Sarang writes "I regularly communicate with Dr. Renner in Switzerland, where the patient is able to undergo medical care for free as a citizen.); AR 830 ("The major impetus for the move is health care expenses. She cannot get the health care in the US that she can get in Switzerland."); AR 954 ("However, due to her insurance, it was significantly cheaper for her to return home to Switzerland for her to get her treatment. Because of this, she established with a Dr. Christoph Renner in Zurich and received 2 cycles of dose adjusted R-EPOCH.").

Even if adequate care was available and/or affordable in California, which the records suggest was not the case, Plaintiff should not be faulted for her treatment choices when faced with a potentially terminal illness. It is not inconsistent that she would be willing and able to endure a long flight occasionally in furtherance of her treatment, while at the same time not able to sit without limitation in the context of full time work as Dr. Sarang opined. Similarly, with respect to the "long drive" to see her psychiatrist Dr. Stuber (roughly 2 hours from Plaintiff's home in Tehachapi to UCLA medical center), it was not leisure travel, and it presumably could have been broken up by any number of breaks.

Finally, the ALJ explained as follows:

Dr. Sarang also provided additional opinions generated after the June 2019 date last insured. In June 2020, about a year after the date last insured, Dr. Sarang wrote the claimant had balance issues and experienced frequent falls due to pelvic scar tissue and gluteus tears (25F/1; 43F/10), and neuropathy "prevents her to be able to work with her hands as well." As a result, Dr. Sarang opined the claimant was "medically disabled." The undersigned notes this final opinion is on an issue reserved to the Commissioner of the Social Security Administration. Dr. Sarang also completed a medical opinion form in June 2020 (26F; 43F/16-23), indicating a less than sedentary residual functional capacity due to significant limitations including an inability to sit, stand, or walk for more than 2 hours total, an inability to lift more than 10 pounds, along with regular breaks to lie down, and more than 3 estimated absences per month. In March 2021, Dr. Sarang provided an updated letter providing similar limitations to those contained in her 2020 letter and questionnaire (34F/1). This reiterated similar assessments made in her earlier opinions, without providing any additional support.

These opinions are given little weight as they refer to conditions after the date last insured including gluteal muscle tears identified in February 2020 (25F/3; 30F/2). Additionally, emails between the claimant and Dr. Sarang reference a more than a yearlong gap in treatment from December 2018 into 2020 (see 43F/33). Moreover, Dr. Sarang's opinions are not supported by her records that showed good stable findings (e.g. 25F/5; 42F/25). Further, they are not consistent with the claimant's activities including regularly traveling abroad, providing care for her son, and driving 2 hours to go to Los Angeles by herself (3F/10, 13, 20; 14F/5; 18F/2).

As to the June 2020 letter from Dr. Sarang, the ALJ was correct that "medically disabled" is a conclusion on an ultimate issue of disability which is reserved for the Commissioner.  However, that was not the only assertion in the letter.  The letter did provide an explanation on the mechanism of injury and the functional relevance of the injuries which provides contextual detail in support of the other opinions.  Dr. Sarang explained that radiation therapy caused the pelvic scar tissue and gluteal muscle tears, the latter of which was confirmed by an MRI.[7] Dr. Sarang further explained that Plaintiff had limited use of her hands due to chemotherapy induced neuropathy.[8]

Finally, the ALJ reaches the actual RFC questionnaire that Dr. Sarang completed which

---

[7] This phenomenon is referred to as "radiation fibrosis syndrome," or "RFS."

[8] "Approximately 30-40% of cancer patients experience some form of neuropathy during or after chemotherapy treatment." https://www.mdanderson.org/patients-family/diagnosis-treatment/emotional-physical-effects/peripheral-neuropathy.html#:~:text=Chemotherapy%3A%20Chemotherapy%20can%20also%20cause,cause%20damage%20to%20nearby%20nerves.

identified a less than sedentary exertional capacity, as well as a 2021 letter reiterating similar limitations secondary to chemotherapy induced neuropathy, along with radiation induced pelvic scar tissue and muscle tears.  AR 780–87.  However, the ALJ gave this little weight as "they refer to conditions after the date last insured including gluteal muscle tears identified in February 2020 (25F/3; 30F/2)."  In any event, this only addresses the timing of the muscle tear, not the chemo-induced neuropathy.

Further, the fact that the gluteal muscle tear was not confirmed by MRI until February 2020 does not mean that the condition arose after the date last insured in July 2019.  To the contrary, Dr. Sarang attributed the injury to radiation therapy.  The radiation and chemotherapy concluded in 2015, thus the ALJ's suggestion that Plaintiff's chemo-induced neuropathy and radiation induced muscle tears post-dated the June 2020 DLI is not compelling.

The ALJ also found the opinion inconsistent with Dr. Sarang's "good stable findings," which is somewhat ambiguous.  AR 21 (citing (e.g. 25F/5; 42F/25)).  Specifically, the first of the cited examinations purportedly demonstrating "good stable findings" in fact notes several <u>abnormal</u> findings, including: 1- "right gluteus TTP with dec. ability to flexion," (musculoskeletal); 2- "fine motor decrease bl, with difficulty buttoning," (neurological); 3- "gait normal but coordination with tandem poor" (neurological); and 4- "dec. vibratory sensation of tip of fingers and toes" (neurological).  AR 778.  These would seem to be precisely the types of <u>findings</u> that would corroborate the radiation induced gluteal muscle tears and chemo-induced peripheral neuropathy.

Returning for a moment to the July 2019 consultative examination, as quoted above in relation to the disabled parking placard application, the ALJ found Dr. Sarang's statements therein "inconsistent with other evidence including the July 2019 consultative examination where the claimant was noted to have an unremarkable gait and generally good range of motion of all major joints (18F/4-5)."  AR 20.  Yet the consultative examiner noted similar findings that Dr. Sarang

noted in the examination described above, including decrease muscle strength in the right hip of 4/5 in flexion and extension, as well as decreased pinprick sensation in the hands and feet.  AR 713.

These findings, though few in number and perhaps not extremely abnormal, are nevertheless reasonably specific in terms of corroborating radiation induced damage to the muscles of the right hip and chemo-induced peripheral neuropathy, lending further support to Dr. Sarang's opinion as to the source of Plaintiff's ongoing limitations despite lymphoma remission.

Finally, the ALJ reiterates that Dr. Sarang's opinions are inconsistent with Plaintiff's ability to fly internationally, drive two hours to psychotherapy, and "providing care for her son."  The first two of these have already been addressed above, and "providing care for her son" is non-specific.

In sum, the ALJ's basis for rejecting Dr. Sarang's opinions was not specific and legitimate.

Next, the ALJ addressed the opinion of the oncologist, noting as follows:

> In January 2019, Christoph Renner, MD, the claimant's oncologist in Switzerland, completed an opinion questionnaire stating the claimant was limited to less than sedentary work, including sitting and standing/walking limited to less than 2 hours total, sedentary-to-light lifting, and more than 4 estimated absences per month (11F/7-10). In February 2019, Dr. Renner also wrote the claimant was "mostly hampered by pain and fatigue" (12F/3). However, there are no contemporaneous treatment records for either of these opinions. The most recent treatment note prior to these opinions was in July 2018. At that time, Dr. Renner noted the claimant's neurological examination was inconspicuous, and there was no indication of active lymphoma (8F/4). Similar good stable findings were noted at Dr. Renner's next treatment note in July 2019 (43F/38). As such the limitations are not supported by Dr. Renner's records. Likewise, these extreme limitations are also inconsistent with good stable clinical findings in Dr. Sarang's records (25F/5; 42F/25), and the claimant's actual functioning including the previously noted traveling abroad, providing care for her son, and driving 2 hours to Los Angeles by herself (3F/10, 13, 20; 14F/5; 18F/2). As such, the undersigned gives Dr. Renner's opinions little weight.

Other than noting the presence of an inoperable residual mass (AR 669), which lends some support for residual pelvic pain, Dr. Renner's opinion concerning Plaintiff's physical limitations was admittedly not supported by *his* findings.  But as an oncologist concerned with monitoring clinical and laboratory signs of lymphoma, Dr. Renner arguably would not make the types of

detailed physical examination findings that would support or detract from the existence of residual pelvic pain and neuropathy as opined by Dr. Sarang. The physical examination notes spanned three lines of text, and his notes suggest that he deferred to Dr. Sarang concerning residual pain and neuropathy. *See* AR 648 ("Pain management and neuropathy: Per Dr. Sarang, patient can no longer tolerate NSAIDs, To reduce the reliance on pain medication, exercise 1-4/week as prescribed by physical therapist, Peripheral neuropathy in fingertips and toes but this has been reduced by Cymbalta . . . ).

### B.   **Subjective Complaints**

#### 1,   **Applicable Law**

An ALJ performs a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. *See Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Smolen*, 80 F.3d at 1281; S.S.R 16-3p at 3.   First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014; *Smolen*, 80 F.3d at 1281–82.   If the claimant satisfies the first step and there is no evidence of malingering, the ALJ must "evaluate the intensity and persistence of [the claimant's] symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities."   S.S.R. 16-3p at 2.

An ALJ's evaluation of a claimant's testimony must be supported by specific, clear and convincing reasons. *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014); *see also* S.S.R. 16-3p at *10.   Subjective testimony "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence," but the medical evidence "is still a relevant factor in determining the severity of claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); S.S.R. 16-3p (citing 20 C.F.R. § 404.1529(c)(2)).

As the Ninth Circuit recently clarified in *Ferguson*, Although an ALJ may use "*inconsistent*

objective medical evidence in the record to discount subjective symptom testimony," the ALJ "cannot effectively render a claimant's subjective symptom testimony superfluous by demanding positive objective medical evidence fully corroborating every allegation within the subjective testimony." *Ferguson v. O'Malley*, 95 F.4th 1194, 1200 (9th Cir. 2024) (emphasis in original).

In addition to the objective evidence, the other factors considered are: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) precipitating and aggravating factors; 4) the type, dosage, effectiveness, and side effects of any medication; 5) treatment other than medication; 6) other measures the claimant uses to relieve pain or other symptom; 7)) Other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms.  20 C.F.R. § 416.929(c)(3).

## 2.    Analysis

There are few novel issues to address here that are not subsumed in the above analysis. Plaintiff explains that "Ms. Lutz's testimony in the record supports several subjective symptoms and pain. [AR at 137.]."  MSJ at 14.  Plaintiff cites to a summary of the testimony drafted by a disability hearing officer in a decision dated July 30, 2019, rather than the testimony itself.  It reflects that Plaintiff reported similar limitations as opined by Dr. Sarang, including the ability to stand/walk between 30 minutes and 3 hours, and inability to sit for prolonged periods due to pelvic pain caused by the residual mass pressing on her sciatic nerve--a similar but subtly distinct mechanism of injury compared with Dr. Sarang's explanation concerning radiation induced scar tissue and muscle tears.  In any case, it is relatively consistent with her claim concerning debilitating residual pelvic pain.

Any additional reasoning articulated by the ALJ not already discussed and refuted above will be considered to the extent it would apply equally to the ALJ's analysis of Dr. Sarang's opinion. The reasoning highlighted by Defendant and/or the ALJ is limited to: 1- Plaintiff's ability to go

swimming (AR 580); 2- improvement in pain and neuropathy symptoms with Cymbalta (AR 648) and Ketamine injections (AR 569, 598, 1178, 1189); 3- Dr. Sarang's April 2018 examination showing no edema, no muscle tenderness, normal hip range of motion and negative straight leg raising (AR 585); and 4- Plaintiff's last examination with Dr. Sarang, in December 2018, before her insured status expired, was normal and she reported no muscle aches or numbness (AR 1133).

As for swimming, it is a non-weight bearing activity which mimics neither sitting, standing, nor walking, and does not by its nature lend much weight or support to Defendant's argument.

Non-specific "improvement" in neuropathy symptoms with Cymbalta (AR 648) is not inconsistent with Plaintiff's alleged limitations.  Importantly, this is not a case where the ALJ assessed an RFC accounting for some significant pain and limitation and where the claimant argues a more restrictive RFC was warranted.  Rather, the ALJ never reached the RFC stage when finding the lymphoma did not meet a listing-- most notably that Plaintiff had no other severe impairments which more than minimally impacted her ability to perform work functions. AR 18, The alleged pain and limitation as described by Plaintiff and Dr. Sarang could easily meet the step-two severity threshold despite the non-specific improvement with medication.  *See Smolen*, 80 F.3d at 1290 (noting the step-two severity threshold is not high, but is a "de minimis screening device to dispose of groundless claims.").

With respect to improved pain levels following Ketamine injections (AR 569, 598, 1178, 1189), one could equally apply the ALJ's reasoning for discounting evidence suggestive of limitations which either: 1- predated the July 1, 2018 disability cessation date, a period of time for which Plaintiff was already paid benefits, or 2- post-dated the July 30, 2019 date last insured,  a period of time for which Plaintiff would be ineligible for benefits.  Likewise, the notes dated November 8, 2017 (AR 598), December 14, 2017 (AR 569), January 15, 2020 (AR 1178), and October 6, 2020 (AR 1189) all reflected improved pain levels following Ketamine injections prior

to the disability cessation date or after the date last insured, and thus would be of limited relevance to Plaintiff's level of pain and limitation during the period under review.   The same would also apply to Dr. Sarang's April 2018 examination showing no edema, no muscle tenderness, normal hip range of motion and negative straight leg raise (AR 585).

Finally, Defendant emphasizes that Plaintiff's last examination with Dr. Sarang in December 2018, before her insured status expired, was normal and that she reported no muscle aches or numbness (AR 1133).  However, the visit appears to be primarily for a chief complaint of left elbow pain which resulted in a diagnosis of lateral epicondylitis followed by an injection at that site.  The musculoskeletal findings would most naturally be understood to apply to the left elbow in question and not to refute the existence of pelvic pain.  Further, the commentary about no muscle aches or numbness appears related to Plaintiff's minor child's upper respiratory infection ("URI"), or perhaps a URI she caught from him, both of which would be equally irrelevant.  AR 1133.

In sum, the ALJ's analysis of Plaintiff's testimony did not add persuasiveness to the discussion.

### VII.   Findings

Substantial evidence and applicable law do not support the ALJ's decision that Plaintiff was not disabled.  Remand is appropriate for the ALJ to conduct a new hearing and issue a new decision: 1- applying the correct legal standard from the pre-March 27, 2017 regulations and associated "treating physician rule" referenced at 20 C.F.R. § 404.1527(c)(2), 2- reconsideration of Dr. Sarang's opinions and Plaintiff's subjective statements concerning her residual/inoperable pelvic mass compressing her sciatic nerve, radiation induced pelvic scarring and muscle tears, chemotherapy induced peripheral neuropathy, and associated pain and limitation.

### VIII.   Recommendations

For the reasons stated above, the recommendation is as follows:

1.      That Plaintiff's motion for summary judgment (Doc. 7) be **GRANTED.**

2.      That Defendant's cross-motion (Doc. 10) be **DENIED.**

3.      That the matter be remanded to the Commissioner of Social Security pursuant to

        sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with the

        Findings and Recommendations.

4.      That the Court Clerk of Court be directed to enter judgment in favor of Plaintiff

        Catherine Ann Lutz and against Defendant Commissioner of Social Security.

**IX.      Objections Due Within 14 Days**

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these Findings and Recommendations, any party may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).


IT IS SO ORDERED.

   Dated:   __September 9, 2024__                    _____ **/s/ Gary S. Austin** ____
                                                     UNITED STATES MAGISTRATE JUDGE

18